GARY M. RESTAINO
United States Attorney
District of Arizona
JARED KREAMER HOPE
Assistant U.S. Attorney
State Bar Number: 025575
ASHLEY ENDERLE
Assistant U.S. Attorney
State Bar Number: 030798
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 18-00078-3-RCC |
| Plaintiff, | |
| vs. | GOVERNMENT'S SENTENCING MEMORANDUM |
| Maria Mendoza-Mendoza, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, hereby submits the following Sentencing Memorandum. Sentencing is currently set for April 2, 2024.

**Guideline Calculation:**

The government concurs with the PSR's calculation of a base offense level of 12, a total offense level of 32 and the defendant's placement in criminal history category I. This would result in a guideline range of 121 to 151 months, but the plea stipulates to a guideline range of 96 to 120 months, and the government requests the Court accept the plea and impose a sentence within the stipulated plea range.[1]

---

[1] This stipulation in the plea also provides benefit to the defendant, as the statutory maximum for money laundering is 20 years, and the plea caps the defendant's exposure at 10 years. Further, Counts 9 and 10 would have potential to be run consecutively and the

**Investigation Overview:**

In October 2016, Homeland Security Investigations (HSI) received information about an alien smuggling organization (ASO) moving thousands of people to stash houses across the United States/Mexico border to stash houses in Phoenix, Arizona. The ASO recruited and coordinated load drivers, collected fraudulent documents from smuggled undocumented non-citizens (UNCs), received buy-outs from the families of smuggled UNCs via cash and wire transfer, and provided the smuggling proceeds and fraudulent documents to other members of the ASO both in the United States and in Mexico. Through further investigation, HSI agents were able to identify the main United States-based coordinator of the ASO as Audias Sanchez-Colin.

HSI utilized numerous law enforcement techniques, including toll analysis, geo-location of cellular devices, vehicle tracking warrants, indices checks, and physical surveillance and interdicted 24 alien smuggling loads in 12 states, involving 140 UNCs. Based on information obtained throughout the investigation, HSI estimates that over 1,000 UNCs have been moved from Mexico into the United States by the ASO, all through the District of Arizona. HSI identified two residences and several motels in the District of Arizona that the ASO utilized as stash houses where the UNCs were held until they (or their family) completed payment for their smuggling journey. After payment, the ASO smuggled the UNCs to their final destination. The ASO utilized numerous funnel accounts to collect millions of dollars in smuggling fees deposited across the United States and withdrawn primarily in the Phoenix, Arizona area.

In January 2018, 27 co-defendants, including Sanchez-Colin and Mendoza-Mendoza, were indicted in this matter. Their roles include: United States-based coordinators, coordinators based in other countries, money launderers, funnel account

---

current plea provides benefit to the defendant by avoiding that potential and dismissing those counts.

holders, accountants, stash house owners, stash house coordinators, recruiters, and load drivers for this ASO.

Specific to the identification of Maria Mendoza-Mendoza, an authorized wiretap on Sanchez-Colin's cell phones beginning in October 2017 revealed that a female who goes by the moniker "Guera" was the Honduras-based smuggler for the ASO. Per the intercepted communications, Guera was responsible for supplying Central American and Mexican UNCs to smugglers operating in and around Altar and Sasabe, Sonora, Mexico. Guera also employed foot guides and money launderers, and smuggled aliens into the United States to work for Sanchez-Colin as load drivers and stash house caretakers. HSI agents met with Border Patrol agents to aid in identifying "Guera." Border Patrol agents disclosed that during the past several years, numerous apprehended UNCs identified a Honduran female known as "La Guera" as the leader of the ASO that made the arrangements to smuggle them into the United States. Border Patrol agents believed this female to be Maria Mendoza-Mendoza, who also goes by the name Roxana Guadalupe Hernandez de Paz, and created a 6-pack photo lineup with Mendoza-Mendoza's picture. More than 10 UNCs positively identified Mendoza-Mendoza as "Guera".  Agents also acquired additional identification evidence from passports, social media and witness interviews corroborating that Mendoza-Mendoza was "Guera".

A warrant issued for Mendoza-Mendoza on January 18, 2018. She was subsequently arrested while attempting to travel to Guatemala and finally extradited from Honduras to the United States on June 22, 2023.

The government also respectfully requests the court incorporate the facts and evidence in the government's detention memorandum (Doc. # 890).

**Defendant's Involvement:**

The government concurs with the PSR's assessment that the defendant was a leader or organizer in this alien smuggling organization, which involved more than five participants.  The defendant's role is evident from her communications with the primary U.S. coordinator, Audias Sanchez-Colin.  The defendant's authority is clear in her ability

to assess punitive sanctions to organization members who have made mistakes. *Attachment A, p. 101-102.* Her organization included obtaining passports for smuggled persons and receiving money for the smuggled persons. *Attachment B, p. 165-166.* She aggressively executed this leadership with threats against the smuggled persons. *Attachment C, p. 385-389.* As the PSR notes, her aggressive control permeates the wire intercepts in this case, with statements about bleeding out members of the organization and enforcement of payments. (PSR ¶ 80).[2]

The defendant led the most concerning aspects of the organization. As a Honduras based coordinator, she acquired a high volume of work for the organization. *Attachment B, p. 161.* This work is reflected in ledgers seized from Sanchez-Colin, which repeatedly reference this defendant as the coordinator for certain people. *Attachment D.* This also resulted in significant money to the organization. *Id.* The defendant also posted social media videos displaying this money. *Attachment E.*

In addition to the significant volume of people smuggled, the defendant's discussions are replete with references to smuggling children. In intercepted conversations, she references a smuggled child being sick (Bates # 253-54), delivery of a child to "Carlos" (Bates #821), Sanchez-Colin smuggling a 10-11 year old (Bates #1045), discussion of a smuggled "kid" urinating blood (Bates 1507-1508), and the incident referenced in the PSR where Sanchez relayed her instructions to drop off 5 people and 2 kids at a stash house (Bates 1934). (PSR ¶ 103).

This defendant also led an organization that posed significant risk to the people smuggled. As the PSR states, a person was killed at a stash house and firearms and

---

[2] Despite stipulating to a leadership role in her plea, the defendant appears to partially deny a leadership role or receiving money. This is not a dispute the court need resolve, as the proposed enhancements are supported by substantial evidence and the plea stipulates to any variance needed to reach the range the parties have agreed upon. The parties do not seek to withdraw from the plea and as such, unless the defendant specifically objects or attempts to controvert the facts in the PSR, the court can rely on the evidence noted by the PSR and government. *United States v. Saeteurn,* 504 F.3d 1175, 1181 (9th Cir. 2007).

ammunition were found during search warrants. (PSR ¶ 104). As stated above, the defendant herself directly made threats against organization members and smuggled migrants. Further, she repeatedly references people potentially being killed during actions in the smuggling organization. (Bates 801, 1003, 1036, 1051, 2318). The defendant's responses to such violence are cold, as she recounts a co-conspirator saying "they're going to kill me here, they're going to lynch me in Guatemala," and says she replied "I told him 'if they lynch you, I don't care.'" (Bates 2318).

In short, the government concurs this defendant was a primary leader of an extensive, high-dollar, smuggling organization that realized substantial revenue by smuggling migrants (often children) in dangerous ways.

**Sentencing Recommendation:**

The government concurs with the PSR's recommendation of 120 months. This sentence is consistent with the application of the sentencing factors outlined in 18 U.S.C. § 3553(a). It takes into consideration the defendant's characteristics, reflects the seriousness of the defendant's conduct, promotes respect for the law, and provides a just punishment that would afford adequate deterrence while protecting the public from further crimes of Defendant. Further, such a sentence would be proportional within the case, as the primary U.S. coordinator, Sanchez-Colin, received a sentence of 120 months. (Docket # 689). A 120 month sentence is appropriate for a leader of an extensive, dangerous organization.

///

Respectfully submitted this 19th day of March, 2024.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *s/Jared Kreamer Hope*
>
> JARED KREAMER HOPE
> Assistant U.S. Attorney
>
> *s/Ashley Enderle*
>
> ASHLEY ENDERLE
> Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 19th day of March, 2024, to:

All ECF Participants